IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NA-QUAN KURT LEWIS, | : |
| Plaintiff, | : |
| v. | : Civ. No. 19-1273-RGA |
| CONNECTIONS, et al., | : |
| Defendants. | : |

___

Na-Quan Kurt Lewis, Howard R. Young Correctional Institution, Wilmington, Delaware, Pro Se Plaintiff.

**MEMORANDUM OPINION**

May 11, 2020
Wilmington, Delaware

/s/ Richard G. Andrews
**ANDREWS, U.S. District Judge:**

Plaintiff Na-Quan Kurt Lewis, a pretrial detainee at the Howard R. Young Correctional Institution in Wilmington, Delaware, filed this action pursuant to 42 U.S.C. § 1983. He appears *pro se* and has been granted leave to proceed *in forma pauperis*. (D.I. 4). I screened the "operative pleading" (D.I. 2, 5, 11), dismissed it, and gave Plaintiff leave to amend. Plaintiff filed a Second Amended Complaint on December 2, 2019 (D.I. 18, 20) which I will review and screen pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(a).

I.  **BACKGROUND**

The claims in the operative pleading occurred between July 11, 2016 and August 15, 2019 regarding criminal charges brought against Plaintiff in 2016, his legal representation, guilty plea, and sentence, conditions of confinement during 2018, the proposed administration of psychotropic medication in February 2018, his arrest in March 2019 and alleged excessive force at that time, refusal of law library access, alleged excessive force, denial of medical care, withholding legal mail in July 2019, and the failure to take Plaintiff to a court date on August 15, 2019. (D.I. 2, 5, 11). All claims and defendants were dismissed upon screening and Plaintiff was given leave to amend. (*See* D.I. 15, 16).

The Second Amended Complaint adds new claims and new defendants that are separate and distinct from the claims raised in the operative pleading with respect to the relevant law, facts, and time frames. The new claims occurred between August 31, 2019 and November 2019 and are raised against the following Defendants:
(1) Correctional Officer B. Carroll and Lt. Gibson when they issued disciplinary reports,

1

Plaintiff was sent to the infirmary, and placed on a suicide watch on August 31, 2019 (*see* D.I. 18 at 19, 20, 43, 44); (2) Paul Dickerson who placed Plaintiff on suicide watch on September 1, 2019 (*id.* at 58); (3) Judge Charles Butler for his actions during judicial proceedings on September 9, 2019 and November 25, 2019 (*see* D.I. 18 at 60); (4) Correctional Officers Verruci, Weist, and Mansfield for their alleged excessive force on September 26, 2019 (*id.* at 50); (5) Connections when its medical personnel administered Plaintiff unwanted medication on October 19, 2019 (*id.* at 52); (6) Delaware Deputy Attorney General William Raisis for his acts during an October 21, 2019 hearing and when he filed an opposition to Plaintiff's motion to suppress on Nov. 7, 2019 (*id.* at 53); and (7) Correctional Officer Vanes and Warden Akinbayo Kolawole who allegedly denied Plaintiff law library access in November 2019 (*id.* at 29, 36).

Plaintiff may not add claims, unrelated in time and facts to the allegations in the original operative pleading. Therefore, I will not consider them and will strike the newly added claims and defendants listed above. *See Nicholas v. Heffner*, 228 F. App'x 139, 141 (3d Cir. 2007) (district court did not err in dismissing amended complaint that set forth new actions against new defendants with new claims arising out of a set of operative facts unrelated to the factual claims in the original or amended complaint). Plaintiff's remedy is to file a new lawsuit or lawsuits.

## II.   SECOND AMENDED COMPLAINT

In addition to the unrelated claims discussed above, the Second Amended Complaint added Defendants raising claims against them for their alleged wrongful acts during the relevant time-frame. The defendants are Judge Robert H. Surles, Judge

2

Ferris W. Wharton, Judge Sheldon K. Renny,[1] Correctional Officer Felipe Soto, Correctional Officer W. Ulloa, Warden Dana Metzger, Correctional Officer Jordon, and Correctional Officer DeJesus. The court liberally construes the allegations raised against these defendants as related to the claims raised in the original operative pleading. Plaintiff has increased his prayer for relief from $300 million to $500 million in compensatory damages and seeks "indefinite suspension." (D.I. 20).

### III. LEGAL STANDARDS

A federal court may properly dismiss an action *sua sponte* under the screening provisions of 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b) if "the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief." *Ball v. Famiglio*, 726 F.3d 448, 452 (3d Cir. 2013); *see also* 28 U.S.C. § 1915(e)(2) (*in forma pauperis* actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions). The Court must accept all factual allegations in a complaint as true and take them in the light most favorable to a *pro se* plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Because Plaintiff proceeds *pro se*, his pleading is liberally construed and his Second Amended Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. at 94.

---

[1] The correct spelling is "Rennie."

3

"[A] complaint . . . is not automatically frivolous because it fails to state a claim. Rather, a claim is frivolous only where it depends on an indisputably meritless legal theory or a clearly baseless or fantastic or delusional factual scenario." *Dooley v. Wetzel*, __ F.3d. __, 2020 WL 1982194, at *4 (3d Cir. Apr. 27, 2020) (cleaned up).

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) and § 1915A(b)(1) is identical to the legal standard used when ruling on Rule 12(b)(6) motions. *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). However, before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. §§ 1915 and 1915A, the Court must grant Plaintiff leave to amend unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d at 114.

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). A plaintiff must plead facts sufficient to show that a claim has substantive plausibility. *See Johnson v. City of Shelby*, 574 U.S. 10 (2014). A complaint may not dismissed, however, for imperfect statements of the legal theory supporting the claim asserted. *See id.* at 11.

Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a c omplaint must take three steps: (1) take note of the elements the plaintiff must plead to state a claim; (2) identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Connelly v. Lane*

4

*Constr. Corp.*, 809 F.3d 780,787 (3d Cir. 2016) (internal citations and quotations omitted). Elements are sufficiently alleged when the facts in the complaint "show" that the plaintiff is entitled to relief. *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## IV. DISCUSSION

### A. Eleventh Amendment

The Second Amended Complaint is brought against all individual defendants in their individual and official capacities. "A suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citations omitted); *Ali v Howard*, 353 F. App'x 667, 672 (3d Cir. 2009). The Eleventh Amendment of the United States Constitution protects an unconsenting state or state agency from a suit brought in federal court by one of its own citizens, regardless of the relief sought. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984); *Edelman v. Jordan*, 415 U.S. 651 (1974). The claims against the individual Defendants in their official capacities are barred by the Eleventh Amendment and will be dismissed.

### B. Judicial Immunity

Judges Wharton, Surles, and Rennie are sued in their official and individual capacities. (D.I. 18 at 3, 18, 21).

5

Plaintiff alleges that on July 6, 2017 his constitutional rights were violated when Judge Wharton sentenced him illegally "how he wanted to" and "he did his own thing." (*Id.* at 3). He also complains that Judge Wharton denied other motions Plaintiff had filed in in his criminal proceedings. (*Id.*). Plaintiff alleges his constitutional rights were violated when Judge Rennie denied a motion to dismiss and motion for reconsideration in Plaintiff's criminal proceedings. (*Id.* at 12). Plaintiff alleges his constitutional rights were violated when Judge Surles presided over Plaintiff's May 24, 2019 preliminary hearing and Judge Surles allowed Plaintiff to waive his right to proceed without counsel in the criminal proceeding without conducting the proper colloquy in violation of federal and Supreme Court guidelines. (*Id.* at 21).

"A judicial officer in the performance of his duties has absolute immunity from suit and will not be liable for his judicial acts." *Capogrosso v. The Supreme Court of New Jersey*, 588 F.3d 180, 184 (3d Cir. 2009) (quoting *Azubuko v. Royal*, 443 F.3d 302, 303 (3d Cir. 2006)). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted 'in the clear absence of all jurisdiction.'" *Id.* It is clear from the allegations that all three judges were acting in the performance of their judicial duties when ruling in Plaintiff's criminal proceedings. Moreover, Plaintiff has not set forth any facts that would show that any of the judges acted in the absence of jurisdiction. The claims will be dismissed against Judges Wharton, Surles, and Rennie based on their immunity from suit.

### C.     April 20, 2018 Claims

These claims are raised against Defendants Warden Metzger, Correctional Officer Jordan, and Correctional Officer DeJesus in their individual and official capacities.  The allegations seem to raise a conditions of confinement claim against Jordan and employees of Connections (the former Delaware Department of Correction contract provider), grievance claims against Warden Metzger and DeJesus, and a transfer to SHU as punishment claim.  (D.I. 18 at 28, 35).

Plaintiff alleges that on April 20, 2018 someone submitted a sick call in his name that stated Plaintiff was going to commit suicide.  (*Id*. at 28).  Plaintiff was transferred to a different building and placed on psychiatric close observation status.  (*Id.* at 28, 35).  He alleges that Jordan placed him in an unclean room that had visible blood, urine, and feces, that Jordan called Plaintiff a killer, and refused Plaintiff's request to place him in a clean environment.  (*Id.* at 28).  Plaintiff alleges that Dr. Yunis saw the conditions and did nothing and that technician Corey saw the conditions and did not move Plaintiff to another room despite his cries.  (*Id.* at 35).  He further alleges that during a February 2019 medical treatment review committee, Dr. Yunis indicated he had seen the conditions and had done nothing.  (*Id.*).  Four days after the transfer, it was determined that Plaintiff had not written the note, and he was returned to the general population.  (*Id.* at 28).

Plaintiff submitted a grievance and was interviewed by DeJesus.  (*Id.*).  Plaintiff alleges that DeJesus notified all correctional officers that Plaintiff had submitted a grievance and said Plaintiff was a snitch.  (*Id.*).  Plaintiff did not receive a disciplinary write-up, but he was moved from general population to a SHU (*i.e.*, Security Housing

Unit) building where he remained for eleven months. (*Id.*). At some point Plaintiff saw DeJesus and asked DeJesus if he had interviewed Plaintiff's witness; DeJesus replied that he had and that the witness did not agree with Plaintiff's version. (*Id.*). Plaintiff spoke to the witness who said he never spoke to DeJesus. (*Id.*).

Plaintiff alleges Warden Metzger violated his constitutional rights because the report (while not clear, presumably Plaintiff's grievance) sat on his desk for a year while he did nothing. (*Id.*).

1. **Conditions of Confinement**

Plaintiff alleges that Jordan housed him in unlawful conditions of confinement. He also alleges that employees of Connections saw the conditions and did not move him from the cell. Pretrial detainees retain at least those constitutional rights enjoyed by convicted prisoners; this principle applies to claims regarding jail conditions. *Bell v. Wolfish*, 441 U.S. 520, 545 (1979); *Hubbard v. Taylor*, 399 F.3d 150, 165-66 (3d Cir. 1005); *Natale v. Camden Cty. Correc. Facility*, 318 F.3d 575, 581-82 (3d Cir. 2003); *Kost v. Kozakiewicz*, 1 F.3d 176, 187-88 (3d Cir. 1993). The Due Process Clause of the Fourteenth Amendment prohibits conditions of confinement that "amount to punishment." *Bell v. Wolfish*, 441 U.S. at 535; *Robinson v. Danberg*, 673 F. App'x 205, 212 (3d Cir. 2016). To determine whether conditions are punitive, the Court considers: "(1) whether there are any 'legitimate purposes . . . served by [the] conditions' and (2) 'whether [the] conditions are rationally related to [those] purposes. *Robinson*, 673 F. App'x at 212 (quoting *Union Cty. Jail Inmates v. DiBuono*, 713 F.2d 984, 992 (3d Cir. 1983).

Plaintiff alleges that he was placed in an unclean cell for four days after "medical"

received a note that Plaintiff was suicidal. Plaintiff's allegations discount any claim that his placement in the cell was done as a means of punishment in violation of the Fourteenth Amendment. Yet, he also alleges there was visible blood, urine, and feces in the cell, and he asked Jordan to move him to a clean environment. Jordan denied his request, as did medical personnel who were aware of the conditions. Plaintiff's single statement that there was visible blood, urine, and feces in the cell, while describing an unpleasant environment, does not provide sufficient detail about the conditions to which he was allegedly exposed. Plaintiff does not explain where the blood, urine, and/or feces was located in the cell, or how it affected him, if at all. It is clear that he did not want to be housed in that particular cell because of what he saw. Without more, however, the conditions as described do not rise to the level of punishment under the Due Process Clause sufficient to state a constitutional violation. Therefore, the conditions of confinement claim against Jordan will be dismissed for failure to state a claim upon which relief may be granted. Plaintiff will be given leave to amend the claim.

The conditions of confinement claim against Connections will be dismissed. Plaintiff's claims against Connections rest upon actions taken by its employees. When a plaintiff relies upon a respondeat superior theory to hold a corporation liable, he must allege a policy or custom that demonstrates deliberate indifference to plaintiff's constitutional rights. *Sample v. Diecks*, 885 F.2d 1099, 1110 (3d Cir. 1989); *Miller v. Correctional Med. Sys., Inc.*, 802 F. Supp. 1126, 1132 (D. Del. 1992). In order to establish that Connections is directly liable for an alleged constitutional violation, a plaintiff "must provide evidence that there was a relevant [Connections] policy or

custom, and that the policy caused the constitutional violation[s] [plaintiff] allege[s]." *Natale*, 318 F.3d at 584. As discussed above, Plaintiff has not stated a claim that the conditions of confinement to which he was exposed violated his constitutional rights. It follows that the conditions of confinement claim as raised against Connections fails to allege a custom or policy established by Connections that caused harm to Plaintiff. Therefore, the claim will be dismissed for failure to state a claim upon which relief may be granted. Plaintiff will be given leave to amend the claim.

### 2. Grievance

Plaintiff seems to raise a grievance claim against Metzger and DeJesus when he alleges that DeJesus did not interview his witnesses and when Metzger allegedly "sat on a report" for a year and did nothing. The filing of prison grievances is a constitutionally protected activity. *Robinson v. Taylor*, 204 F. App'x 155, 157 (3d Cir. 2006). To the extent Plaintiff bases his claim upon his dissatisfaction with the grievance procedure or delay or denial of his grievance, the claims fail because an inmate does not have a "free-standing constitutional right to an effective grievance process." *Woods v. First Corr. Med., Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)). The complaint that DeJesus did not interview his witness does not state a constitutional claim. *See Gay v. Shannon*, 211 F. App'x 113, 116 (3d Cir. 2006) (citing *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Hurley v. Blevins*, 2005 WL 997317 (E.D. Tex. Mar. 28, 2005) (failure to investigate a grievance does not raise a constitutional issue.). The claims against Warden Metzger and DeJesus are frivolous and will be dismissed.

### 3. Transfer to SHU

Plaintiff alleges that he was transferred from general population to SHU without ever receiving a disciplinary write-up. He does not indicate who was responsible for the transfer.

"Prison officials must provide detainees who are transferred into more restrictive housing for administrative purposes only an explanation of the reason for their transfer as well as an opportunity to respond." *Stevenson v. Carroll*, 495 F.3d 62, 70 (3d Cir. 2007). Plaintiff does not allege who transferred him, if he was given a reason for the transfer, or whether he was given an opportunity to respond to the reason for the transfer. The sparse allegations fail to state a claim and will be dismissed. Plaintiff will be given leave to amend the transfer to SHU claim.

### D. July 18, 2019

Plaintiff alleges that on July 18, 2019, Correctional Officer Soto, who is sued in his individual and official capacities, violated his right to use the law library, lied, and Plaintiff was then placed in the hole for no reason. (D.I. 18 at 48). Plaintiff alleges that he asked Soto to make a call to see if Plaintiff could physically use the law library. (*Id.* at 48). Plaintiff watched and Soto never made the call. (*Id.*). When Soto called for count, Plaintiff remained in the day room, explained to Soto that he was representing himself, and Soto did not call anyone about the law library visit in violation of Plaintiff's constitutional rights. (*Id.*). Soto then called a "Code 6 refusal to lock in and failure to obey an order" and issued Plaintiff a disciplinary write-up for the two violations. (*Id.* at 48, 49). Plaintiff was transferred to the hole or disciplinary pod for six days before he saw a hearing officer, he "beat [the] write-up," and was found not guilty. (*Id.* at 48).

### 1. Law Library Access

Plaintiff's claim is that Soto lied about making a call to see if Plaintiff could physically use the law library. To the extent Plaintiff alleges he was denied law library access, the claim fails.

Persons convicted of serious crimes and confined to penal institutions retain the right of meaningful access to the courts. *Bounds v. Smith,* 430 U.S. 817 (1977). This access "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id.* at 828. This right "must be exercised with due regard for the 'inordinately difficult undertaking' that is modern prison administration." *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989) (quoting *Turner v. Safley,* 482 U.S. 78, 85 (1987). Thus, courts have been called upon to review the balance struck by prison officials between the penal institution's need to maintain security within its walls and the rights of prisoners. *Howard v. Snyder,* 389 F.Supp.2d 589, 593 (D. Del. 2005).

Plaintiff does not allege that he was deprived total access to the law library. Rather, he alleges that Soto did not make a telephone call to see if Plaintiff could physically access the law library on the day that Plaintiff wanted to visit the law library. The Court takes note of his complaint, but the claim does not warrant action by the court and will be dismissed as frivolous.

### 2. Due Process

Plaintiff alleges that Soto lied about calling the law library, issued Plaintiff a disciplinary write-up, and Plaintiff was placed in the hole for no reason for six days.

"Generally, prisons may sanction a pretrial detainee for misconduct that he commits while awaiting trial, as long as it is not a punishment for the 'underlying crime of which he stands accused.'" *Kanu v. Lindsey*, 739 F. App'x 111, 116 (3d Cir. 2018) (quoting *Rapier v. Harris*, 172 F.3d 999, 1003-06 (7th Cir. 1999)). For pretrial detainees, "the imposition of disciplinary segregation for violation of prison rules and regulations cannot be imposed without providing the due process protections set forth in *Wolff v. McDonnell*, 418 U.S. 539 (1974)." *Kanu*, 739 F. App'x at 116. Those protections "include the right to receive written notice of the charges at least 24 hours before the hearing, the opportunity to present witnesses and documentary evidence, and a written statement of the reasons for the disciplinary action taken and the supporting evidence." *Id.* (citing *Wolff*, 418 U.S. at 563-66); *see also Stevenson v. Carroll*, 495 F.3d at 70.

While Plaintiff complains that Soto lied about calling the law library, he also states that when Soto called for count, Plaintiff told Soto he had violated his constitutional rights and Plaintiff remained in the day room. At that that point, Soto called a code for refusal to lock and failure to obey an order and issued Plaintiff a disciplinary write-up for those charges. To the extent Plaintiff contends that Soto issued a false disciplinary report, while "the filing of a fraudulent misconduct report and related disciplinary sanctions do not without more violate due process," *Seville v. Martinez*, 130 F. App'x 549, 551 (3d Cir. 2005), "[d]ue process is satisfied where an inmate is afforded an opportunity to be heard and to defend against the allegedly false misconduct reports," *Thomas v. McCoy*, 467 F. App'x 94, 97 (3d Cir. 2012); *see also Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002) ("[S]o long as certain procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports,

without more, are not enough to state a due process claim."). Plaintiff alleges that when he saw the hearing officer, he beat the charges and was found not guilty. It is clear from Plaintiff's allegations and the attached disciplinary report that Plaintiff received the procedural protections due him. *See London v. Evans*, 2019 WL 2648011, at *3 (D. Del. June 27, 2019) ("The filing of false disciplinary charges does not constitute a claim under § 1983 so long as the inmate was granted a hearing and an opportunity to rebut the charges.").

Further, Plaintiff was only in the hole for six days. Because segregation at a different administrative security level is the sort of confinement that a detainee should reasonably anticipate receiving at some point in his detention depending on events and his own conduct, the transfer to a less amenable and more restrictive custody does not implicate a liberty interest that arises under the Due Process Clause. *See Fountain v. Vaughn*, 679 F. App'x 117, 120 (3d Cir. 2017) (citing *Torres v. Fauver*, 292 F.3d 141, 150 (3d Cir. 2002)). To determine whether a protected liberty interest exists, a federal court considers the duration of the disciplinary confinement and the conditions of that confinement in relation to other prison conditions. *See Mitchell v. Horn*, 318 F.3d at 532. It has been determined that administrative custody for a period as long as fifteen months had been is not an atypical and significant hardship. *See Griffin v. Vaughn*, 112 F.3d 703, 708 (3d Cir. 1997); *McDowell v. Deparlos*, 2017 WL 1158093, at *8-9 (M.D. Pa. Feb. 2, 2017) (dismissing detainee's due process claim based on false misconduct report where detainee did not "allege that he was not provided with an explanation for his transfer to the SMU, nor that he was denied an opportunity to respond to the transfer, and he was held there in administrative custody for only fifteen

days before his disciplinary hearing occurred, not indefinitely"), report and recommendation adopted, 2017 WL 1134407 (M.D. Pa. Mar. 27, 2017). As discussed, Plaintiff's confinement was limited to six days.

Plaintiff has not alleged a plausible due process claim. His transfer to the hole for six days was not beyond what a detainee might reasonably expect to encounter, particularly when he concedes he did not obey Soto's call to lock in for count. The due process claim will be dismissed as frivolous.

### E. Personal Involvement

The Second Amended Complaint lists as a defendant Correctional Officer W. Ulloa. (D.I. 18 at 2). I have reviewed the Second Amended Complaint and found no mention of Ulloa. A claim under 42 U.S.C. § 1983 requires a showing that a defendant was personally involved in the alleged wrongdoing. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). There are no allegations directed towards Ulloa and, therefore, he will be dismissed as a defendant.

### F. Municipal Liability

Plaintiff alleges that the New Castle County Police Department received a call on May 16, 2019 for an incident involving Plaintiff, a fight, and a firearm. (D.I. 18 at 45). Plaintiff alleges that witnesses gave differing accounts on whether Plaintiff possessed the weapon, that numerous persons, some of whom were wearing gloves, touched the weapon, and that Plaintiff denied possessing the weapon. (*Id.*). Plaintiff alleges that he was the only person arrested and that fingerprint and DNA testing came back negative. (*Id.*). Plaintiff alleges that the New Castle County Police deliberately failed

to preserve and gather potential exculpatory evidence that would have proved his innocence at an earlier stage. (*Id.*). Plaintiff alleges that everyone involved in the incident should have been fingerprinted and had their DNA tested. (*Id.*). He also alleges that the police lost his beautiful $1800 coat. (*Id.*).

At first blush, it is evident that the allegations do not adequately plead a municipality claim against the New Castle County Police Department. (*See e.g.*, D.I. 15 at 10-11). Of greater concern is that Plaintiff's claim against the New Castle County Police Department is closely related to his pending criminal matter. Under this situation, where the § 1983 plaintiff has yet to be tried and his civil claims are closely related to his criminal proceedings, a stay of the civil action is appropriate. *See McKinney v. Prosecutor Cty. Prosecutor's Office*, 612 F. App'x 62, 65-66 (3d Cir. 2015) (concluding that the district court erred in dismissing the plaintiff's malicious prosecution claims under *Heck* when the criminal case was still pending because *Heck* does not apply to an anticipated future conviction and the proper course of action is to stay the adjudication under the end of the criminal proceedings).

Therefore, the claim against the New Castle County Police Department will be dismissed for failure to state a claim upon which relief may be granted and Plaintiff will be given leave to amend the claim. In addition, the case will be stayed pending the outcome of Plaintiff's criminal proceeding.

## V. CONCLUSION

For the above reasons, the Court will: (1) strike and dismiss from the Second Amended Complaint (a) the October 19, 2019 claim against Connections; and

(b) Defendants Officer B. Carroll, Lt. Gibson, Judge Charles Butler, Correctional Officer Vanes, Warden Akinbayo Kolawole, Correctional Officers Verruci, Weist, and Mansfield, Paul Dickerson, and Delaware Deputy Attorney General William Raisis and the claims against them; (2)(a) dismiss Warden Metzger, Correctional Officers DeJesus, Felipe Soto, and W. Ulloa and the claims against them as legally frivolous; (b) dismiss the transfer to SHU claim, the conditions of confinement claim against Correctional Officer Jordan and Connections ,and the municipality claim against the New Castle County Police Department for failure to state claims upon which relief may be granted; and (c) dismiss Judge Surles, Judge Wharton, and Judge Rennie based upon their immunity from suit, pursuant to 28 U.S.C. § 1915(e)(2)(B) (i), (ii), and (iii) and 1915A(b)(1) and (2); (3) stay the matter pending resolution of Plaintiff's pending criminal case; and (4) give Plaintiff leave to file a third amended complaint on the transfer to SHU claim, the conditions of confinement claim raised against C/O Jordan and Connections, and the municipality claim against New Castle County Police Department upon lifting of the stay.

    An appropriate order will be entered.